LEMAN B HOTCHKISS and others, Respondents, *v.* THE CLIFTON AIR CURE, Appellants.

EQUITY. SALE BY REFEREE UNDER DECREE OF FORECLOSURE. REMEDY. RIGHTS OF PARTIES BIDDING AT A SALE.

Where a referee, under a decree of foreclosure, effects a sale of premises upon terms not authorized by the decree, the remedy of parties aggrieved is to be sought by an order vacating the sale and directing a resale of the premises.

Parties who, in good faith, have bid upon property upon the terms offered by the referee, and made payment accordingly, cannot be compelled to pay any sum in excess of such bid, upon the ground that such sum is required to make the bid correspond with the terms upon which alone the referee was authorized to make the sale.

The equitable interposition of the court in behalf of an aggrieved party must be sought through other means than a proceeding or order plainly inequitable as against another party.

THIS is an appeal from an order of the General Term of the seventh judicial district, reversing an order of the Special Term of the same district. On the 30th December, 1867, a decree of foreclosure and sale was made at said Special Term, by which Edwin Hicks was appointed to make sale of certain premises, described in the papers. The plaintiff in the decree was the respondent, Hotchkiss, and the appellant and a large number of persons, including the other respondents, were the defendants.

The referee advertised the said premises for sale, pursuant to the decree, on the 15th day of February, 1868, and on that day made a sale to the respondents, Warner & Moore.

The premises, at the time of such sale, were incumbered by the lien of a prior mortgage for $2,500, with interest from November 8, 1867, which was all due.

On the day of sale the referee first offered the premises for sale subject *to said* prior mortgage, and afterward and before the sale, at the suggestion of the plaintiffs' attorney in the foreclosure suit, he stated he would pay off said prior mortgage and give a clear title.

The premises were then sold under that announcement for $20,000.

The referee thereupon executed a deed of the said premises, free from incumbrance, and the respondent paid him the sum of $20,000, less $2,562.63, which was the amount of such prior mortgage on the day of sale.

On the 7th March, 1868, the appellant gave notice of motion to compel the respondents to complete their purchase, etc.

This motion was founded on the decree and an affidavit of the referee and the president of the appellant.

The motion was opposed upon the affidavits of the respondents and ten other persons present at the sale, of whom the plaintiff's attorney is one, and also the record of such prior mortgage. The opposing affidavits show that the respondent, Warner, first bid $16,500, subject to such prior mortgage, and after the announcement that the premises would be sold free and clear, or that such prior incumbrance would be paid out of the proceeds, he made a second bid of $20,000, at which price the premises were struck off to him.

The only conflict in the moving and opposing papers is that the referee recollects but one bid of $20,000.

On this point he is contradicted by the affidavits in opposition as to the fact, and two of the affiants prove the referee's admission to the contrary.

The respondents, Warner & Moore, instead of paying the amount of the $2,500 mortgage to the referee, to be by him applied in extinguishment thereof, with the assent of the referee, assumed the payment thereof, and retained such amount in their own hands.

The referee conveyed the premises to Warner & Moore, who conveyed two-thirds of them to the respondent, Hotchkiss, with covenants against incumbrances.

The respondents entered into possession of the premises, and made large expenditures upon them before the notice of this motion was given.

The Special Term granted the motion that the purchasers pay the additional sum of $2,562.63.

Upon appeal to the General Term of the seventh district, this order was reversed, and the appeal is brought therefrom to this court.

*John H. Reynolds*, for the appellant.

I. The referee had no authority to make the sale of the property upon any other terms or dispose of the proceeds in any other manner than authorized and directed by the judgment.

1. By the judgment, he was directed to sell the property at public auction, to the highest bidder, and out of the proceeds to pay taxes, the plaintiff's debt and costs, and within two days after the sale to deposit the surplus with the treasurer of the county of Ontario, subject to the further order of the court.

2. No prior incumbrancer was made a party to the suit, and the referee had nothing to do with prior liens. The sale he was authorized to make would pass to a purchaser such right and title as the mortgagor had, and nothing more; and the referee had no authority to make any contract to convey, under the decree of the court, any different title. (42 Barb. 366 ; 44 id. 168.)

3. His announcement, therefore, at the sale, that he, as referee, would pay off the prior mortgage out of the proceeds of the sale, was wholly unauthorized, and was not binding upon the court or upon any one, whose interest was affected by it.

4. This the purchasers were bound to know, and if the sale was improperly conducted by the referee, or their bid was made under any misapprehension by which their interests suffered, they should have applied to the court to be relieved from the purchase, or for a resale. (*Requa* v. *Rea*, 2 Paige, 339 ; *Cazet* v. *Hubbell*, 36 N. Y. 677.)

5. So long as the sale stands they must comply with its terms, and pay to the referee the full amount of their bid. Under no circumstances or pretense whatever can they be permitted to retain any part of it, after having received the deed and entered into possession of the property.

6. Even if the referee had any right to agree to pay off the prior incumbrance, and the purchasers bid upon the faith of it, they would not be justified in retaining any

portion of the purchase-money under pretense that they would discharge the prior lien. They must still pay over to the referee to the end that he might discharge the incumbrance and thus be enabled to account for the proceeds of the sale in his report.

7. If, as the referee was untruly informed by the plaintiff's attorney, the judgment had contained a provision for the payment of prior liens out the proceeds of the sale, the purchaser would of necessity be required to pay the whole purchase-money, or the referee could never execute the judgment, or complete his report. In judicial sales it is the officer of the court alone who executes the judgment, and he is alone responsible for its due execution, and purchasers have no right to assume to discharge any part of his duties in any case, or under any pretense whatever.

8. The referee had no means of knowing whether any prior incumbrance existed, or if any, its amount, or to whom payable, and if the incumbrance (if any existed), was to be paid out of the proceeds of the sale, it was a matter of the least importance to all parties interested in the surplus, and it would be impossible to ascertain the amount of the surplus in any authentic form, except through the referee and by his report. And his report could not be confirmed until all the proper receipts were annexed. (Rule 72 of Supreme Court; *Beekman* v. *Gibbs*, 8 Paige, 511.)

9. And this was a case, where it was indispensable to the right of the owner of the equity of redemption that the *whole* surplus arising should be paid into court, subject to its further order, after hearing all the parties concerned. Upon such a hearing, the just rights of all could be protected in the disposition of the surplus. As it now is, the purchasers assume to decide their own case in their own favor, without allowing the adverse claimants to be heard.

II. It is obvious, also, that the referee was designedly imposed upon by the plaintiff or his attorney, or both, and by this imposition induced to make the announcement that he would pay the prior mortgage out of the proceeds of the sale, and give a clear title to the property. There was apprently

a combination between the plaintiff and Warner and Moore to purchase the property at a moderate figure, and they succeeded, for at the day of sale it was worth $30,000.

1. Although the actual bid was made by Warner, both the plaintiff and Moore were interested, the plaintiff to the extent of three-fourths and Moore one-eighth, the arrangements having obviously been all made previous to the sale, and the transaction consummated as soon as the sale was over.

2. The plaintiff and his attorney knew that the judgment did not provide for the payment of any prior mortgage out of the proceeds of the sale, and when the sale first opened the property was offered subject to it. The plaintiff then had the referee called into an adjoining room, under pretense that the terms of sale were not understood. And then the plaintiff's attorney told him (obviously in the presence of the plaintiff), that the judgment provided for the payment of the prior mortgage out of the proceeds of the sale, and the announcement was thereupon made to the persons attending the sale. This statement was known to be false by the attorney and the plaintiff, and the fact that it was made is not controverted either by the plaintiff or the attorney, although both made affidavits in opposition to the motion.

3. Immediately after the sale the arrangements were all consummated. The referee conveyed the property to Warner. The plaintiff gave a receipt for the amount of his mortgage debt — the attorney for his costs; $871.78 of surplus was paid to the referee, and they declined to pay the balance, $2,526.63.

4. It will be observed that the terms of sale were cash. The plaintiff and his associates having made the arrangement before indicated, would require but a small amount of money to make the purchase, while a bidder not in the combination must *instantly* pay the whole amount of his bid. If the property had been sold according to the judgment, subject to the prior mortgage, so much less money would be required to be paid down; but, by the plan finally adopted, the large amount to be raised on the instant would naturally deter outside bidders, and no doubt but that it was so intended.

III. The Clifton Air Cure being the owner of the equity of redemption, and entitled to the surplus, or, at least, interested therein, was the proper party to make this motion. (*Livingston* v. *Meldrum*, 19 N. Y. 440; 45 Barb. 69.)

1. Its rights are injuriously affected by the action of the purchasers in withholding the portion of purchase-money referred to, which is claimed by the Clifton Air Cure as surplus money, and which claim they desire to maintain before the court, upon the usual reference as to surplus money.

2. So long as this money is retained by the purchaser there can be no reference as to the surplus, under the practice of the court.

3. All of the amount of the bid beyond the sum necessary to pay the plaintiff's debt, interest and costs, was *surplus money*, and the defendant had the right to assume that, according to the direction of the judgment, that sum would be paid into court. There was nothing at the sale to lead any one to suspect that it was to be retained by the purchasers.

IV. It was not competent for the purchasers to impeach or attempt to vary or modify the legal effect of the report of the referee by affidavits. They cannot in such way inject into it an agreement by the referee, which the judgment did not authorize, and for this reason decline to pay their bid. If they can succeed in the present case, then it follows, of necessity, that a referee or other officer of the court in making a sale, may disregard the directions of the judgment, make outside contracts with purchasers, to allow them to retain the purchase-money, and leave parties interested in a surplus without adequate means to protect or enforce their rights.

*E. G. Lapham*, for the respondents.

I. The materiality of the question whether there was one or more bids is not very obvious. Warner, the bidder, was at liberty to withdraw the bid at any time before the execution of the agreement, and the terms of that agreement control all that preceded it. But, if material, the papers show clearly there was a bid of $16,500, subject to the mortgage, and of $20,000 for a clear title to the premises.

II. This is not a motion to open or avoid the sale for irregularity. The motion assumes the sale was in accordance with the decree. The papers show it was for the interest of the appellant. Subject to the prior mortgage, the referee was only offered $16,500. After he announced he would pay that and give a clear title, he received a bid of $20,000, or for $17,437.37, after paying the prior mortgage, thus saving nearly a thousand dollars to the appellant by the change in the mode of sale.

III. The motion to have the purchasers complete their sale must fail, for the reason that they have already done so. They have assumed to pay the prior mortgage and interest, for which the appellant was not liable, and have paid the balance to the referee. There is no dispute about this. The object of the motion is to compel the respondents to pay $2,563.63 and interest, more than they agreed to pay, or else the proceeding is a useless one. If the money is to be paid to the referee, and by him to the treasurer, merely to have it repaid to the holder of the prior mortgage, the ceremony is a useless one, and incurs needless expense. The respondents have agreed to make the payment without fees or commissions. The referee and treasurer would be entitled thereto. If brought into court, the money kept back would not be sufficient to pay the prior mortgage and interest. The referee promised to pay it out of the proceeds of the sale. By allowing the purchasers to do the same, his agreement with them is fulfilled, and no injustice is done to the appellant. The appellant, therefore, has no ground upon which to stand, demanding relief, except by the preposterous claim, which is really made, that the purchasers shall pay the $20,000 bid, for its benefit, and pay the prior mortgage beside; thus making the bid $22,462.63, instead of $20,000. This condensing $22,562.63 into $20,000, for the purpose of legal or equitable relief, eclipses all the modern operations of science in compressing our common air for the purposes of the remedies proposed to be administered by such institutions as the appellant.

IV. The case in 36 N. Y. 677, which was relied on as sus-

taining the present motion, has no application here. In that case there was no dispute about the balance of the purchase-money, and the motion was opposed on the ground that the purchaser had given his note with a surety to the sheriff, who made the sale for the balance unpaid. Here it is shown there is no surplus, unless the purchasers are to pay the $20,000 bid, and take the premises subject to the prior mortgage. They have never agreed to do this. Upon the undisputed facts, they were to have that mortgage paid out of the purchase-money, and that has been done. The court is now asked to make a new contract, and to compel its performance by process of attachment. The only remedy was to reopen the sale as irregular, or on the ground of mistake, but that remedy is not sought.

V. There is nothing in the objection made below, as recited in the order of the Special Term, that the respondents cannot read opposing affidavits. The motion is founded upon affidavits, and a like mode of opposing it is the only one open to the respondents. Such was the case in 36 N. Y. before cited. We ask for an affirmance of the order of the General Term, with costs.

HUNT, Ch. J. It is quite possible that the referee erred in undertaking, upon the sale, to provide for the payment of the prior mortgage. The decree simply directed him to sell the premises, and to distribute the proceeds in the manner therein pointed out. To have confined himself to the duty thus indicated, would have been a performance of which no one could have complained. The plaintiff's attorney having the carriage of the decree, desired the referee to announce that he would pay off the prior mortgage, and that the purchaser should receive a clear title. Without much reflection, and without an opportunity to examine the decree, the referee made such announcement, and made the sale on those terms. The appellants here, being a portion of the original defendants, say that this was unauthorized by the decree, that it produced an injurious effect upon the price to be obtained, and ask that the purchaser be compelled to pay

the amount of the prior incumbrance. Assuming the law to be as claimed by the appellants, the relief asked for is a *non sequitur.* If the sale was irregular or unauthorized, it by no means follows that the purchasers should be compelled to pay $2,500 more than they bid for the premises. On the contrary, the plain remedy would be to vacate the sale, and again to offer the premises for sale. This the appellants do not ask, and apparently do not desire. While they insist that the sale was irregular, they also insist upon its confirmation. While they say that the referee had no right to sell upon the promise of giving a clear title, they still insist that the purchasers shall be held to their purchase, and shall pay $2,500 more than they undertook to pay, when they bid on the property. This claim is in violation of every sound principle. The purchasers never made the contract which the appellants seek to impose upon them. They have performed fully the bargain they did make. The appellants have received, and yet enjoy the benefit of it, and nothing further can be required of the purchasers.

I can see no advantage in requiring the purchasers to bring this $2,500 into court for the purpose of distribution. There is no suggestion that the holder of the mortgage desires this to be done, or even that his mortgage is in such a condition that he can be compelled to receive the amount of it. He is not even a party to the action. Whether it is done, or the mortgage shall continue as a security, and shall be a lien on the premises sold, is of no possible importance to the appellants. It covers the whole premises, is the first, and so far as appears, the only lien, and all the appellant's rights in the premises are finally and forever foreclosed.

The order of the General Term should be affirmed, with costs.

CLERKE, J. This may be deemed an application seeking the equitable interposition of the court. The application is, that the purchasers should be compelled to complete their purchase. The answer is, that they have already done so. The referee expressly told them, at the time of the sale, that

at the suggestion of the plaintiff's attorney in the foreclosure suit, he would pay off the prior mortgage, and give a clear title. The premises were then sold under that announcement, for $20,000, and thereupon such an arrangement was made that the referee executed and delivered a deed, and the purchasers paid him $20,000, less $2,562.63, which was the amount of the prior mortgage on the day of sale, and which, unless since paid by the purchasers, is still an incumbrance on the premises. The effect of granting this application would be to compel the purchasers to pay $2,562.63 more than they contracted to pay. This would be inequitable; and the General Term were right in refusing to lend its aid to an effort to deprive these purchasers of money which they never undertook to pay.

The order should be affirmed, with costs.

So affirmed.